IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION

TRACY A. MORRIS,
Plaintiff,

vs.                                                                Case No. 05  0029

MARONDA HOMES, INC. OF FLORIDA,
a Florida corporation,
Defendant.
_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**(JURY TRIAL DEMANDED)**

Plaintiff, Tracy A. Morris ("Plaintiff"), sues the Defendant, Maronda Homes, Inc. of Florida, (" Maronda Homes") and alleges as follows:

1. This action for damages and equitable relief is brought under the Florida Civil Rights Act, Fla. Stat., chapter 760 (hereinafter FCRA) and Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k), (hereinafter Title VII). All such claims asserted herein exceed $15,000.00, exclusive of interest, costs, and attorneys' fees.

2. Plaintiff has performed all conditions precedent necessary to the maintenance of this action, including the timely filing of charges of discrimination with the Florida Commission on Human Relations and with the Equal Employment Opportunity Commission.

## PARTIES

3. Plaintiff is a resident of Polk County, Florida and at all material times was an employee of Maronda Homes.

4. Defendant Maronda Home, Inc. of Florida is a Florida corporation with its registered principal place of business in Pittsburgh, Pennsylvania. Maronda Homes was doing business in Hillsborough County, Florida at all material times.

5. The acts giving rise to this Complaint have occurred in Hillsborough County, Florida. Venue is appropriate in Hillsborough County, Florida.

## STATEMENT OF FACTS

5. At all times material to the instant allegations, the business operations of Maronda consisted of the development and selling of residential homes in several Florida counties.

6. Plaintiff, a female, began working for Maronda Homes in its Hillsborough County office as a Sales Administrator on or about April 1, 2002.

7. Within Plaintiff's 90 day probationary period, Plaintiff worked for Gus Hevia, the Division Manager for Tampa's Southern Division.

8. During Plaintiff's probationary period, other women in the office raised concerns about Mr. Hevia's attitude and treatment of women in the office. Plaintiff was also treated with condescension by Hevia and as a result she told Bob Meadows, former Division Manager for Tampa's Northern Division that she was considering leaving Maronda Homes. Meadows told Plaintiff and other female

-2-

workers to write down their concerns with Hevia's behavior and that he would present this information to Maronda Homes Division President, Wayne Von Dreele.

9. On July 1, 2002, Hevia told Plaintiff that she was not entitled to a review and that he was going to speak with Meadows about her. Meadows, in turn, gave Plaintiff a good 90 day review. Plaintiff also received a raise.

10. A few days after receiving her review, Plaintiff told Meadows that she had received an offer from a large company and that she was thinking of taking the offer. Meadows told Plaintiff that he would move her from Hevia's supervision; that she would be promoted to handle the administration of the Northern and Southern Divisions; and that she would receive a pay increase. Plaintiff turned down the other work opportunity based on Meadows' promises. Then Meadows told Plaintiff that she would not receive her pay increase until the end of the year.

11. During the remaining five months of 2002, Plaintiff performed her job well, and she was told of no deficiencies with her job performance during the remainder of 2002.

12. In or about January of 2003, Plaintiff told several employees at Maronda that she was pregnant. On or about February 3, 2003, Plaintiff announced at an office meeting that she was pregnant.

13. After Plaintiff announced that she was pregnant on or about February 3, 2203, and because of Plaintiff's pregnancy, Plaintiff received the following treatment:

a. On or about February 4, 2003, the day after she officially announced her pregnancy, Plaintiff lost her promotion as her position was split and half of her duties were given to another employee;

b. On or about February 6, 2003, Plaintiff was told that she was being put on 30 days probation for a negative attitude, and that she would have been fired but for Gus Hevia. Plaintiff was not allowed to comment, and Meadows yelled at Plaintiff and pounded his fists and cursed at her. Meadows told Plaintiff that she was moving back under Hevia's supervision;

c. Plaintiff was denied a position she applied for as Assistant Superintendent;

d. Plaintiff was screamed and cursed at by Meadows for her calling the state help line to inquire whether she would have workers' compensation benefits for having to leave work on a day while office construction caused her physical problems. Plaintiff was also told that her doctor's note was bogus. Plaintiff was told by Meadows that she was a liability to him because of her "condiiton";

e. Plaintiff received many disparaging comments from her bosses Hevia and Meadows about her pregnancy, to include her need to take breaks and eat, (comments such as, "when you can pry yourself from your food"), her mobility, her moods and hormones. In commenting about an assignment he was giving to

Plaintiff, Hevia patted her belly with the back of his knuckles and said, "I figured you needed the exercise." As a result of these offensive comments and conduct, Plaintiff dangerously lost weight and became dehydrated, and she produced doctor's notes concerning her need to eat and have regular breaks. On May 6, 2003, Plaintiff sent Hevia an email request asking that the offensive comments stop. In response, Hevia scolded Plaintiff that he protected her from being fired and that she needed to be loyal to him;

    f.    Plaintiff's confidential health information was discussed in the office;

    g.    Plaintiff's work duties increasingly were reduced, and she was blamed for work that had been assigned to other employees and that had not been done adequately by them;

    h.    On or about May 21, 2003, Plaintiff typed up a letter request for FMLA leave for the delivery of her baby as instructed by Maronda's out of state HR department personnel. She presented it to Hevia who tossed it across his desk stating that he was "not going to sign off on this shit" and he questioned that she was entitled to FMLA leave. He refused to sign Plaintiff's FMLA request and said that he would call HR. A few days later, Hevia told Plaintiff that he giving her a lowered review because of "the FMLA thing." Although he put in her written review that she had unsatisfactory work performance and did not mention in writing that he "was so pissed off about [her] calling HR about FMLA" as he told her in his office;

    i.    In June of 2003, Plaintiff was having physical problems as a result of standing for long periods of time. Plaintiff told Hevia that she needed help with large copying assignments that were requiring her to stand too long. Hevia told her to get a doctor's note, which Plaintiff received and presented. Hevia told Plaintiff that her pregnancy is "a pain in my ass."

    j.    Plaintiff received constant berating from Hevia on trivial behaviors, such as the color of highlighter Plaintiff used to where she sat her coffee and put her lunch box.

14.    On or about June 16, 2003, Plaintiff phoned Maronda's HR department in Pennsylvania to ask about the procedure for filing a complaint. She was told to look at the company handbook. She told Maronda's HR Director, Rosina Maljak, that her office did not have a handbook. Maljak faxed Plaintiff the handbook pages dealing with Sex Harassment.

15.    On or about June 26, 2003, Plaintiff sent to Maljak a detailed complaint of discrimination and harassment based on her gender, namely her pregnancy. After she sent her complaint, Hevia told her that she would be given a floater position or no position at all. He told her that she could bet that he would be micro-managing her more.

16.    At no time did Plaintiff receive any notice of an investigation being conducted by Maronda into her discrimination and harassment complaint.

17. Plaintiff went out on FMLA leave for the delivery of her baby on September 5, 2003. She returned to work on December 1, 2003.

18. When Plaintiff returned from leave, she returned to an empty desk without a pen and without a functional computer and proper computer programs, password and voice mail. Her sales administration book was gone. She was told of her "new responsibilities" and told by Hevia to look at the classifieds because they had trained a replacement for her' that she was a cancer destroying the group; that the company had fulfilled its FMLA obligations by reinstating her; and that she would not make it to strike two in a three strike situation.

19. On December 16, 3003, Plaintiff was written-up for alleged performance deficiencies. On January 9, 2004, Plaintiff was issued another write-up, and while Plaintiff was trying to defend herself against the January 9, 2004 write-up, she was yelled at by Maronda's District Manager and told that she was fired and to "get the hell out now!"

## COUNT I: PREGNANCY DISCRIMINATION UNDER THE FLORIDA CIVIL RIGHTS ACT and TITLE VII

20. Plaintiff sues Maronda Homes under Title VII and the Florida Civil Rights Act, and realleges the factual allegations contained in paragraphs 1 through 19 as if fully set forth herein.

21. Plaintiff belongs to a protected group (female and pregnant).

22. Plaintiff was denied the same terms, conditions and privileges of employment given to non-pregnant employees, namely she was subjected to a hostile working environment, micro-management, false criticisms of work performance, broken promises of a raise, and termination by Maronda Homes' managers.

23. The actions of Maronda Homes' managers were taken against Plaintiff in violation of the Florida Civil Rights Act and Title VII because they were done on account of Plaintiff's pregnancy.

24. The actions of Maronda Homes' managers were intentional and done with malice or reckless indifference for Plaintiff's civil rights.

25. As a result of Maronda Homes' unlawful acts, Plaintiff has been injured

## COUNT II - RETALIATION UNDER TITLE VII and THE FLORIDA CIVIL RIGHTS ACT

26. Plaintiff sues Maronda Homes under Title VII and the Florida Civil Rights Act, and realleges the factual allegations contained in paragraphs 1 through 19 as if fully set forth herein.

27. In retaliation for Plaintiff opposing discrimination and harassment to her managers, and for complaining to Maronda Homes' Human Resources Department, Plaintiff was subjected to increased harassment, micro-management, false criticisms of work performance and termination by Maronda Homes' managers.

28. The retaliatory actions of Maronda Homes' managers were intentional and done with malice or reckless indifference for Plaintiff's civil rights.

29. As a result of Maronda Homes' retaliatory actions, Plaintiff has been injured.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully demands that this Court enter judgment against Maronda Homes and in favor of Plaintiff pursuant to Title VII and the FCRA and that the following relief be awarded to Plaintiff:

(1) **declare** that Maronda Homes' acts complained of herein are in violation of Title VII and the FCRA;

(2) **enjoin and permanently restrain** Maronda Homes from engaging in violations of federal and state equal employment opportunity laws;

(3) **direct:**

(a.) **Maronda Homes** to place Plaintiff with full seniority in a position equivalent to one she would have held but for Maronda Homes' discriminatory firing of her with an award of back pay, including all lost benefits, plus interest thereon, and all other actual monetary losses incurred by the Plaintiff. If reinstatement is impracticable, Plaintiff requests an award of front pay;

(b.) **Maronda Homes** to pay Plaintiff compensatory damages;

(c.) **Maronda Homes** to pay Plaintiff punitive damages;

(d.) **Maronda Homes** to pay Plaintiff her costs of this action, including expert fees, together with a reasonable attorneys' fee;

(e.) **Maronda Homes** to provide Plaintiff with such other and further relief as this Court deems necessary and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury in this action of all issues so triable.

Respectfully submitted on this 3rd day of January, 2005.

Catherine A. Kyres, P. A.

Catherine A. Kyres
Fla. Bar No. 913057
3815 W. Azeele Street
Tampa, FL 33609
(813) 874-0036
Facsimile: (813) 874-0037
Counsel for Plaintiff